UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 12-184-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| EMERY WEYLAND GRAHAM | |

**MEMORANDUM RULING**

Before the Court is an emergency motion for release to supervised release or home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) filed by the Defendant, Emery Weyland Graham ("Graham"). Record Document 40. The Government opposes Graham's motion. Record Document 43. For the following reasons, Graham's motion is denied.

**I.   Background**

In 2011, Graham began sending sexually explicit text messages to a minor whom he believed to be a thirteen-year-old girl. After the victim's mother discovered the messages, she told Graham to stop contacting the victim and informed law enforcement. Undercover officers (acting as the minor victim) then contacted Graham. He again engaged in a sexually graphic conversation, sent pornography, requested sexually graphic pictures of the minor, and asked for the minor's phone number so that he could call her. Graham called the phone number and spoke to a female undercover officer, instructing her how to masturbate while he masturbated.

Graham was arrested and has remained in custody since October 2011. In July 2012, he was named in a ten-count indictment in the Western District of Louisiana.

Graham entered a guilty plea to one count of attempting to use a child to produce a visual depiction, and on June 19, 2013, was sentenced to 188 months' imprisonment and ten years of supervised release.  He is currently housed at the Federal Correctional Institution in Seagoville, Texas ("FCI Seagoville").  Graham's projected release date is February 9, 2025.

Due to COVID-19, Graham seeks a modification of his term of imprisonment to allow him to be released on supervised release or home confinement, pursuant to 18 U.S.C. § 3582(c).  The World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a global pandemic related to the spread of the COVID-19 virus, a strand of the novel coronavirus. The CDC has advised that persons over the age of sixty-five and those with certain underlying medical conditions are considered high risk and are particularly susceptible to contracting the virus.  In light of this pandemic, the President of the United States has declared a national emergency and many governors have declared public health emergencies.  The CDC and all health authorities have strenuously recommended social distancing as a means of limiting community spread of the virus.  On a federal level, the President has advised against any gatherings of groups larger than ten people, and that is only when absolutely necessary.

The prison population is particularly at risk due to the conditions of confinement, the close contact of inmates, and the inability to maintain social distancing.  Responding to this concern, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") "expand[s] the cohort of inmates who can be considered for home

release." Pursuant to that provision of the CARES Act, United States Attorney General William Barr issued an April 3, 2020, memorandum instructing the BOP to maximize transfer to home confinement of "all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations." See Memorandum from Attorney General William Barr to Director of Bureau of Prisons, *The Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (April 3, 2020), https://www.justice.gov/coronavirus (last visited 4/13/2020). The April 3 memo urged the BOP to undertake its review urgently and assess inmates with high risk factors for COVID-19 who would be appropriate candidates for release. If they are deemed good candidates, the Attorney General instructed the BOP to immediately process the respective inmates and to immediately transfer those inmates to their homes, after a fourteen-day quarantine. The BOP responded to confirm the urgency of the situation and announced that it is reviewing all inmates who satisfy the Attorney General's criteria for release. It has committed additional resources to complete this task as quickly as possible.

In this case, Graham is fifty years old and allegedly suffers from severe asthma and high blood pressure. He submits that he is considered high risk for becoming severely ill from COVID-19. Graham did not provide any information on his living conditions at FCI Seagoville, that is, whether he is in a small cell or a large dormitory with other inmates. He also provided no information on the overall health conditions and infection rate at FCI Seagoville. Nonetheless, Graham argues that his medical conditions and the

COVID-19 pandemic within a prison setting constitute extraordinary and compelling reasons to warrant his release from BOP.

In response, the United States argues that Graham is not entitled to the relief requested because he has failed to demonstrate the necessary extraordinary and compelling reasons required by the compassionate release statute. Further, even if Graham has presented "extraordinary and compelling reasons," he has failed to demonstrate "that the BOP is incapable of managing the situation so that release is warranted." Record Document 43 at 13.

## II.   Law and Analysis.

### A.   Exhaustion of Remedies

Graham has filed his motion for a sentence modification under the First Step Act of 2018. He asks the Court to grant him compassionate release per 18 U.S.C. § 3582(c)(1)(A)(i).[1] This allows for the modification of a term of imprisonment upon a

---

[1] It is important to distinguish between the CARES Act, on the one hand, and § 3582 as amended by the First Step Act on the other. The CARES Act was the federal government's comprehensive response to the COVID-19 crisis and certain provisions addressed the release of eligible inmates in the prison population. The CARES Act expanded the BOP's authority under 18 U.S.C. § 3624(c)(2) to release prisoners from custody to home confinement.

Section 3624(c)(2) authorizes the BOP to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624(c)(2). The CARES Act, in turn, provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the

finding that certain extraordinary and compelling reasons warrant a reduction in an inmate's sentence. As amended by the First Step Act in December of 2018, the compassionate release provision provides:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>
>>>> (i) extraordinary and compelling reasons warrant such a reduction . . .

---

maximum amount of time that a prisoner may spend in home confinement. Thus, home confinement determinations rest with the BOP.

In this case, Graham seeks judicial relief under 18 U.S.C. § 3582, which permits the district courts to reduce a prisoner's term of imprisonment under certain circumstances. Thus, the statute applicable to the Court's analysis here is § 3582, not the CARES Act and its expansion of § 3624(c)(2). To the extent that Graham seeks release to home confinement under § 3624(c)(2) and the CARES Act, the motion is dismissed for lack of jurisdiction. See United States v. Gentry, No. CR 5:03-50033-05, 2020 WL 2131001, at *5 (W.D. La. May 5, 2020) (compiling cases holding that federal district courts lack jurisdiction over requests for release to home confinement under the CARES Act because that decision is reserved to the BOP).

>  and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Although sentence reductions under § 3582 historically could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to allow prisoners to petition the district courts as set forth above.  However, as the statute makes plain, prior to filing a motion for release in the district court, a prisoner must first exhaust his administrative remedies either by fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release on his behalf, or by filing the motion with the court after a lapse of thirty days from the date of the warden's receipt of his request for release, "whichever is earlier." 18 U.S.C. § 3852(c)(1)(A). The administrative-exhaustion provision is set out in mandatory terms—the district court can modify a sentence only after the defendant has exhausted administrative remedies.

Here, Graham filed a request for compassionate release with the warden on March 26, 2020 and the warden denied the request on April 10, 2020.  Record Documents 43-1 and 43-2.  Graham did not appeal this denial, and thus has not fully exhausted his administrative remedies. See Record Document 43-2; 28 C.F.R. §§ 542, 571.63. However, Graham did wait thirty days after filing his initial request before initiating the present motion. According to the United States, this means that the Court has authority over Graham's motion because he has satisfied the thirty-day lapse provision of 18 U.S.C. § 3852(c)(1)(A).  Record Document 43 at 5.

The Court notes that the Government's position is not the only interpretation of § 3852's exhaustion requirement. Other district courts faced with the question of whether an inmate who requests compassionate release from the facility warden and receives a denial within thirty days must then fully exhaust administrative remedies before filing a motion for compassionate release in federal court have reached differing conclusions. Compare, e.g., United States v. Mazur, No. CR 18-68, 2020 WL 2113613, at *2–3 (E.D. La. May 4, 2020) (finding § 3852 is satisfied when the defendant filed his motion more than thirty days after his initial request to the warden for compassionate release even though the warden responded within thirty days and the defendant did not appeal that decision) with United States v. Seng, No. S5 15-CR-706 (VSB), 2020 WL 2301202, at *4 (S.D.N.Y. May 8, 2020) (concluding that § 3582(c)(1)(A)'s thirty-day lapse provision is only applicable if the BOP fails to respond to an inmate's request for compassionate release within thirty days).

This Court concurs with the Government's interpretation and the interpretation adopted by the Eastern District of Louisiana in United States v. Mazur. Section 3852(c)(1)(A) states that an inmate must either exhaust his administrative remedies or wait for a lapse of thirty days from the time he files his request with the warden, "whichever is earlier." The statute does not state that BOP must not act on inmate's request during the thirty-day waiting period to satisfy the thirty-day lapse provision. Therefore, a plain reading of the statute leads the Court to conclude that an inmate satisfies the statutory requirement by either exhausting his administrative remedies or waiting thirty days after filing a request with the BOP before filing a motion with the

sentencing court, regardless of whether the BOP responds to the inmate's request within thirty days. Thus, Graham satisfied the requirements of § 3852(c)(1)(A) by waiting thirty days after filing his request with the warden and the Court will address the merits of his motion.

    B.    Extraordinary and Compelling Reasons

Graham's motion for compassionate release must be denied because he has failed to demonstrate extraordinary and compelling reasons to warrant his release. Section 3582(c)(1)(A) would permit a reduction in Graham's term of imprisonment, subject to consideration of the § 3553(a) factors, if he had exhausted his remedies and the Court determined that extraordinary and compelling reasons warranted a reduction. The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

Turning to the Guidelines, U.S.S.G. § 1B1.13, Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A), explains that a reduction is authorized when the court determines that extraordinary and compelling reasons exist and the defendant is not a danger to the safety of any other person or the community. Under § 1B1.13 Application Note 1, the following are deemed extraordinary and compelling reasons: (1) defendant's

medical condition;[2] (2) defendant's age;[3] (3) family circumstances;[4] or (4) other reasons. U.S.S.G. § 1B1.13, Cmt. n.1. "Other reasons" is a catchall category defined as "extraordinary and compelling reasons other than, or in combination with" medical condition, age, or family circumstances as "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, Cmt. n.1(D).

The Court finds that Graham has failed to present evidence of extraordinary and compelling reasons to modify his prison sentence. Graham is not terminally ill; is not suffering from a serious physical or medical condition; is not suffering from a serious functional or cognitive impairment; is not experiencing deteriorating physical or mental health because of the aging process; has not served seventy-five percent of his sentence; and is not experiencing dire family circumstances. Graham must therefore rely on the catchall provision which requires proof of extraordinary and compelling circumstances, but he has failed to make a sufficient showing to garner the requested relief.

---

[2] The defendant must be suffering from a terminal illness, or (1) a serious physical or medical condition, (2) a serious functional or cognitive impairment, or (3) deteriorating physical or mental health because of the aging process, which substantially diminishes the defendant's ability to provide self-care in the prison environment and from which the defendant is not expected to recover. U.S.S.G. § 1B1.13, Cmt. n.1(A).

[3] Defendant is at least sixty-five years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or seventy-five percent of his term of imprisonment, whichever is less. U.S.S.G. § 1B1.13, Cmt. n.1(B).

[4] Family circumstances require the death or incapacitation of the caregiver of the defendant's minor child or children or the incapacitation of the defendant's spouse or registered partner where the defendant is the only available caregiver for him or her. U.S.S.G. § 1B1.13, Cmt. n.1(C).

A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. While Graham does not rely solely on generalizations to support his argument, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. The Court stresses that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person. The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner.[5]

In support of his claim of extraordinary and compelling circumstances, Graham argues that his medical conditions—severe asthma for which he is prescribed an

---

[5] The only appellate court to have addressed this issue concurs with this Court's conclusions. In Raia, despite acknowledging that COVID-19 presents a considerable threat to the health of federal inmates, the Third Circuit nonetheless explained that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597. The Third Circuit added that the "BOP's shared desire for a safe and healthy prison environment" and "the Attorney General's directive that [the] BOP 'prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic' " only highlighted the BOP's seriousness in handling the present crisis and the value of requiring inmates to first exhaust administrative remedies. Id.

emergency inhaler and high blood pressure—qualify him as a "high-risk" and "vulnerable" individual for serious complications from the coronavirus. Record Document 40 at 6. He asserts that "the prison environment has no ability to practice social distancing" and increases his risk. Id.

Graham is correct that under CDC guidelines, individuals with moderate to severe asthma are considered to be at higher risk of serious complication from COVID-19. See Ctr. for Disease Control and Prevention, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 13, 2020). However, Graham has not provided sufficient details for the Court to determine the seriousness of his asthma and hypertension or the effects these conditions may have on his cardiac health. The only medical documentation presented for the Court to review is a list of Graham's current medications and records from a February 2020 visit to the FCI's Chronic Care Clinic where Graham reported that "[h]e rarely has to use his inhalers." Record Documents 40-2 and 43-3. At the visit, the doctor renewed Graham's prescriptions for his current asthma and hypertension treatment. Record Document 43-3. These records do not provide the necessary medical information and specificity needed to adequately evaluate the severity of Graham's asthma or hypertension, how his hypertension makes him more susceptible to COVID-19, or any way in which the BOP's treatment of these conditions is inadequate.

The fact that Graham is housed at FCI Seagoville further supports a denial of his motion. At this time, there has only been one reported case of COVID-19 at FCI

Seagoville. And, if an outbreak were to occur, Graham has not shown that FCI Seagoville would be unable to manage it or that the institution's medical personnel would be unable to adequately treat him. United States v. Clark, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (denial of compassionate release is warranted when the defendant failed to establish that there are extraordinary and compelling circumstances and the defendant failed to provide evidence that the BOP is unable to adequately protect inmates). General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence. Clark, 2020 WL 1557397 at *4.

In sum, Graham has failed to satisfy his burden of showing the necessary circumstances, or a combination of circumstances, that would warrant relief under the compassionate release statute. Although the Court does not wish to minimize the significance of this outbreak or the risks that face those within the prison population, the Court does not have carte blanche to release whomever it chooses. Instead, it is up to each defendant to demonstrate how his release is appropriate under the statutory framework to which the Court must adhere. Unfortunately for Graham, he has not done so.

Accordingly, Graham's motion for release [Record Document 40] is **DENIED WITHOUT PREJUDICE**.

**THUS DONE AND SIGNED** this _8th_____ day of June, 2020.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE